IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

In re: )
PLAZA PROPERTIES, LLC, et al., )
)
)
Debtors, ) NO. 08-CV-313-DRH
) NO. 08-CV-314-DRH
) NO. 08-CV-547-DRH
) NO. 08-CV-548-DRH
)

**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

This matter is before the Court on appeals from the final Orders of the Bankruptcy Court for the Southern District of Illinois. The initial case filed, *Plaza Properties, LLC v. Jenkins Displays Co.,* 08-CV-313-DRH, was accompanied by a second filing, *Commercial Mortgage Services, LLC v. Plaza Properties*, 08-CV-314-DRH. In addition two more appeals have been filed related to the adversarial actions in the underlying bankruptcy case, *Plaza Properties, LLC v. US Bankruptcy Clerk,* 08-CV-547-DRH, and *Commercial Mortgage Services, LLC v. US Bankruptcy Clerk,* 08-CV-548-DRH**.**

Pending before the Court are not only the appeals from the bankruptcy court, but also appellee's, Jenkins Displays Co. (Jenkins), Motion to Dismiss in the primary appeal (Doc. 23, 08-CV-313-DRH), a motion to supplement the motion to dismiss (Doc. 31, 08-CV-313-DRH) and a motion to stay pending appeal filed by Commercial Mortgage Services (CMS) (Doc. 21 08-CV-313-DRH). Also pending are Jenkins' Motion to Dismiss the Appeal of the Adversarial Proceeding (Doc. 9, 08-CV-547-DRH) and a motion to consolidate (Doc. 6, 08-CV-548-DRH).

# BACKGROUND

Before addressing the pending motions and the appeals, a brief review of the history of this case is in order. To say that this is a complicated series of appeals would be an understatement. At the heart of these cases lie four critical orders: a March 29, 2006, order of the Bankruptcy Court which allowed Plaza Properties, LLC and Property Consultants (Debtors) to borrow money[1] from Commercial Mortgage Services LLC, as part of the Debtors Chapter 11 Bankruptcy case; a March 20, 2008, order in clarification of the 2006 order; an order of the Bankruptcy Court dated June 27, 2008, finding that Jenkins was entitled to distribution of assets held in escrow; and, finally, a September 24, 2008, order directing distribution of the escrowed assets to Jenkins.

The first critical order, referred to by the parties (and now by this Court) as the "Financing Order," dated March 29, 2006, allowed the Debtors to grant a lien to CMS against their real property. The Financing Order did not specifically refer to Jenkins Displays Co.'s (Jenkins) interest in the property, but the motion filed by the parties indicated that the Financing Order they sought (and prepared for the Bankruptcy Judge's signature) would leave un-impaired Jenkins' interest (which they indicated was a "disputed" interest at the state court level). Jenkins was a creditor and party in interest in the Debtors' bankruptcy case as a result of a claim and lien against the Debtors' real property. The Financing Order further allowed the Debtors to use the money that they borrowed from CMS to make payments on the accounts of certain liens securing SPCP Group, LLC's (SPCP) claims. The record reveals that SPCP held a mortgage lien against

---

[1] The March 29, 2006, Order of the Bankruptcy Court allowed the Debtors to borrow approximately 1.5 Million dollars from CMS.

Debtors real property, and Ronald Schantz, who is the principal of CMS and its source of funding, personally guaranteed the obligations of the Debtors to SPCP.

Jenkins, had, prior to the time the Debtors filed their Chapter 11 action, filed suit in the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois seeking to enforce state mechanic's liens against Debtors' real estate. The Debtors then filed their Chapter 11 proceeding, and, during the bankruptcy proceedings sold several pieces of real estate. The balance of the proceeds from those sales were held in escrow, and amount to nearly 1.5 Million dollars. Cardinal Title is escrow agent and Heartland Bank was the depository (the "Escrow Account"). CMS, SPCP and Jenkins each asserted interest in those escrowed funds. (The funds have now been distributed to Jenkins, as is more fully discussed below.)

Subsequent to the filing of the Chapter 11 petition (which led to the appeals in 08-CV-313-DRH and 08-CV-314-DRH), in July of 2006 adversary proceedings were filed in the in the Bankruptcy Court by the debtors, seeking a determination from the Bankruptcy Court that Jenkins did not hold a valid claim in the bankruptcy cases, and did not have a valid mechanics lien against Debtors real property.[2] CMS was allowed to intervene in this adversarial

---

[2]The record reveals that after the Debtors filed their Chapter 11 petition, Jenkins sought and received relief from the automatic stay to pursue the Lien Priority litigation in the state court. Undeterred, the Debtors filed the adversarial proceedings and then removed the lien action from the state court to the Bankruptcy Court. The Bankruptcy Court remanded the lien action to the state court, and specifically found that it should abstain from the state court matters. After a jury trial on the merits, judgment was entered in favor of Jenkins and against the Debtors in the amount of 1.6 Million dollars. The state court judgment concluded that Jenkins held a valid superior lien to the underlying real property, and therefore held a priority interest in the proceeds from the sale of that property, which was subject to an escrow account established by the Bankruptcy Court.

Pursuant to 28 U.S.C. § 1334(c)(1) Judge Fines entered an order finding that the lien priority disputes were best left to the state court proceedings already in progress and therefore abstained from hearing the issues raised in the adversarial proceedings.

proceeding, and the debtors and CMS sought to challenge the state-court judgment in the bankruptcy court.[3] Jenkins received an adjudication from the state court in March of 2007 that it had a valid claim and first priority lien against the Debtors' real property. The Debtors have appealed that judgment, but the record reveals that the state appellate proceeding has not yet been resolved *and*, further reveals that the Debtors did not seek a stay pending appeal on that judgment. CMS was not a party to that lawsuit. As a justification for the decision not to seek a stay pending appeal, Debtors assert that they had no assets and could not have posted bond. (See, Doc. 18, p. 2; 08-CV-547-DRH). Apparently, neither CMS nor SPCP sought to intervene in the state-court appeal proceedings.

In January of 2008, the Bankruptcy Court confirmed the Debtors' Third Amended Chapter 11 Plan of Liquidation, which, provides, inter alia, that the disposition of the Escrow Account is to be governed, notwithstanding anything in the Plan to the contrary, by the Escrow Agreement.

In March of 2008, the Bankruptcy Court issued a clarifying order[4] directed to the terms and conditions of the March 29, 2006, Financing Order. This clarifying order is entitled "Order Concerning Motion to Construe Order Approving Post-Petition Financing and to Determine Priority of Lien Provided for in Order Approving Post-Petition Financing" (See. Doc. 24-1, 08-

---

[3]The adversarial actions sought, inter alia, for the bankruptcy court to determine the amount of Jenkins' Proof of Claim in the underlying bankruptcy proceeding and to determine the extent, validity, and priority of the mechanic's lien asserted by Jenkins. (*See* appeals of adversarial proceedings: 08-CV-547-DRH; 08-CV-548-DRH).

[4]The Bankruptcy Court, Judge Meyers, found that the Financing Order of March 29, 2006, was "ambiguous and must be construed, interpreted and clarified so as to correctly and clearly reflect the intent and meaning of the Court when it entered that Order." (2008 Order at 6.)

CV-313-DRH) ("2008 Order.") In the 2008 Clarifying Order, the Bankruptcy Court discussed its March 29, 2006, Financing Order and stated that the interests held by Jenkins were intended by the Court to have remained unimpaired by the Financing Order. The Bankruptcy Court stated, "Any other construction of the DIP (Debtors' Motion to Approve Post-Petition Financing Pursuant to 11 U.S.C. § 364(d)) Order would render Jenkins impaired since it would no longer have a paramount lien against Debtors' real estate. In short, when CMS advanced funds, there was a dollar for dollar reduction in SPCP's claim." (2008 Order at p. 6). The Bankruptcy Court further held that, "Jenkins [interest] is unimpaired by virtue of that construction (of SPCP having priority to CMS), which is what the Court intended when it entered the DIP Order." (BKCY Ct. Order of March 20, 2008, see Appendix 1 to Doc. 30, 08-CV-313).

In May of 2008, Jenkins sought distribution of the Escrow Account on the basis that there was no stay in the state court to enforcing the judgment and that under the Court's 2008 Order clarifying its Financing Order, Jenkins had priority to the money.

On June 25, 2008, the Bankruptcy Court, Judge Fines, sustained a motion for abstention filed by Jenkins in the adversarial proceedings, stating, in relevant part:

> This Court concurs with the arguments presented in the Motion for Abstention of Defendant, Jenkins Displays Co., and finds that, pursuant to 28 U.S.C. § 1334(c)(1), it should abstain from hearing the issues raised by this adversary proceeding and allow the matter to proceed through the appellate process in the Illinois State Court.

On June 27, 2008, the Bankruptcy Court, Judge Meyers, then entered an Order finding that Jenkins was entitled to immediate distribution of all funds in the Escrow Account and directed Cardinal Title to immediately distribute the funds. Neither CMS nor the Debtors directly appealed that Distribution Order. Accordingly, on September 24, 2008, pursuant to a

further directive of the Bankruptcy Court, all funds in escrow were distributed to Jenkins. Debtors have acknowledged that no appeal was taken from that final order of the bankruptcy Court ordering distribution of the funds held in escrow. (See. Doc. 18, 08-CV-547-DRH).

Jenkins asserts that the distribution of the funds in the Escrow Account to Jenkins renders the appeals of the decisions of the bankruptcy judge moot. CMS filed responses to the motions to dismiss asserting that the Court should not find that these matters are moot and that the Court should remand this action to the bankruptcy court with directions that the escrowed funds should not be distributed or that Jenkins should return any disbursed funds because the Bankruptcy Judge erred when he abstained from determining the validity of the Jenkins' state court lien and further erred when he "clarified" his Financing Order to determine that Jenkins' interests were not affected by that the Financing Order. Debtors further assert that just because the funds were distributed to Jenkins is "irrelevant to whether Jenkins will keep it in the end." *Id.*

The escrow agreement was signed by the Debtors, CMS and Jenkins. It specifically provided for the distribution of the escrowed funds as follows:

> The Escrowed Funds shall be held in trust until the parties make application to the United States Bankruptcy Court for the Southern District of Illinois for distribution and the Bankruptcy Court issues its order setting forth the amount of the Escrowed Funds to be released to each party. When the Bankruptcy Court order is final an non-appealable, the Escrowed Funds shall be distributed pursuant to the terms of the order.

The Bankruptcy Court abstained from determining the validity of Jenkins' state law claims, and once the state court entered judgment in Jenkins' favor Jenkins sought distribution. The Bankruptcy Judge, noting that there was no stay in effect, found that Jenkins' rights were fully

enforceable and that it was entitled to immediate disbursement. Notably, none of the other parties, CMS or the Debtors appeared at the distribution hearing, and they did not file an appeal of that order. (Although they did file a motion for stay, it was filed in the adversarial appeal more than 30 days after the bankruptcy judge denied the motion to stay.) The time for the filing of a notice of appeal expired, and in September, 2008 with an order of distribution by the bankruptcy court.

Debtors and CMS now assert that the appeals are not moot because this Court can grant them effective relief. They assert that the Bankruptcy Judge's order ruling that the escrowed funds should be disbursed to Jenkins because no stay was in place merely was an execution of the state court judgment which is on appeal. Debtors also assert that the disbursement is not a "final determination of who is actually entitled to the money," and CMS also asserts that the disbursement order was "merely a ruling that there was no stay in place preventing the funds from being disbursed in light of the court's prior rulings."

The Debtors and CMS offer that if the appeal of the state court proceeding is in the Debtors' favor, then Jenkins will need to pay back the money. And CMS asserts that if a court can fashion some kind of relief an appeal is not necessarily moot. The Court is not unmindful of the conundrum in which the Debtors and CMS find themselves, but it is a conundrum of their own making. First of all, had the debtors sought a stay of the state court judgment, then the bankruptcy judge would have honored the stay and not have entered the distribution order.[5]

---

[5] It is of little persuasion to the Court that the Debtors were without the ability to seek a stay due to lack of funds. There are options available, including seeking relief from the bankruptcy court to secure funds to support a bond on appeal; seeking relief from the state court to post a minimal bond or to forego the bond; and other similar options.

Second, as the record reflects, the Debtors and CMS did not timely appeal the distribution order, but rather sought a stay in the adversarial action. Finally, none of the parties sought withdrawal of the reference to the Bankruptcy Court.

This is the classic situation where the parties seek relief where no real relief exists, and it is much too late for this Court to act effectively. Clearly a bankruptcy judge has the authority and ability to reconsider and clarify prior orders, all courts do. And, abstention is available, in particular where the Court applies a balancing test, as it has done here. 28 U.S.C. § 1334(c)(1). *See also Chicago, Milwaukee, St. Paul & Pacific RR Co. v. CMC Heartland Partners,* 6 F.3d 1184, 1189 (7th Cir 1993). In this case the Bankruptcy Court found that the state court lien issues were already proceedings, and were related to the bankruptcy matter, and that it was appropriate to abstain under those circumstances. Clearly, "section 1334(c)(1) is concerned with comity and respect for state law, whether a case involves unsettled issues of state law is always significant." *Id. See also*, *In re L&S Indus., Inc.,* 989 F.2d 929, 935 (7th Cir. 1993) ("Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration.") Here, the ongoing state court proceedings, not a mere reference to the state court. The Bankruptcy Court had remanded the action and found that abstention was proper. The Court finds that the abstention appears to have been proper in this case, under these circumstances.

Upon review of the record, the Court therefore **FINDS** that the motions to dismiss filed by Appellee Jenkins are well taken as this matter has been rendered moot by the distribution of funds from the Escrow Account to Jenkins. As a result of the fact that the parties did not appeal the distribution order, once it was rendered final and appealable and the distribution of the

8

Escrow Account completed, the pending matters in these appeals were rendered moot.

Accordingly, the Court rules as follows:

1. Jenkins's motion to dismiss (Doc. 23, 08-CV-313-DRH) is **GRANTED**, and the bankruptcy appeal, 08-CV-313-DRH, is **DISMISSED** as moot.

2. Jenkin's motion to supplement the motion to dismiss is **GRANTED** (Doc. 31, 08-CV-313-DRH).

3. CMS's motion to stay pending appeal (Doc. 21, 08-CV-313-DRH) is **DENIED** as Moot.

4. In light of the fact that the Court has dismissed, as moot, the appeal in this matter, all related cases are, sua sponte, **DISMISSED** by the Court as moot: 08-CV-314-DRH; 08-CV-547-DRH; 08-CV-548-DRH. All matters pending in those cases are further **DENIED** as moot.

**IT IS SO ORDERED.**

**DATE:** March 31, 2009

/s/ *David R Herndon*
**CHIEF JUDGE**